UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SHERYL ORLIK, individually and on behalf of
JARED ORLIK, minor child,

                           Plaintiffs,

-against-

DUTCHESS COUNTY, STATE OF NEW YORK,
ROBERT B. ALLERS, in his capacity as Commissioner
of Social Services; ASHLEY TILTON, individually and as
Caseworker; ANN WOOLSEY; individually and as
Supervisor; NETTER E. THOMAS; individually and as
Caseworker DAVID GARCIA; individually and as a
Supervisor IRENE MAGALSKI, individually and
as deputy commissioner; all of the DUTCHESS
COUNTY DEPARTMENT of SOCIAL SERVICES,
And the DUTCHESS COUNTY DEPARTMENT
of SOCIAL SERVICES,
                           Defendants.

---------------------------------------------------------------X

PLAINTIFF'S
FIRST AMENDED
COMPLAINT

INDEX NO.
08 Civil 1213
(Judge Connor)

JURY TRIAL
DEMANDED

**NOW COMES** the plaintiff Sheryl Orlik (the "Mother"), individually, And on behalf of Jared Orlick a minor child against defendants and states as follows:

## INTRODUCTION

1. This is a 42 U.S.C. 1983 civil action in which the plaintiffs request monetary damages for the wrongful removal of plaintiff Jared Orlik, (the "child") from the custody of the Plaintiff natural mother. At the time of the removal there was no danger or imminent risk of danger to the child's life or health. The defendant's maliciously prosecuted the mother and conspired to falsely accuse the mother of abuse or neglect in an unconstitutional effort to deny the mother her due process

rights guaranteed under the Fourth and Fifth Amendments of the United States Constitution as derived through the Fourteenth Amendments of the United States Constitution and their right secured under Article 1 Section 12 of the New York State Constitution

2. After the removal of the children, and in furtherance of the conspiracy, the defendants, Thomas, Garcia, Tilton and Woolsey compelled the mother to undergo improper and unneeded evaluations, treatments and deprived the mother of reasonable visitation with her son. The unwarranted removal and the continued denial of the return of the child for over six months substantially violated the Plaintiffs due process rights.

## JURISDICTION AND VENUE

3. Plaintiffs bring this action against defendants to redress the deprivation of rights secured to them by the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution as derived through the Fourteenth Amendment of the United States Constitution and pursuant to 42 U.S.C. Sections 1983 and 1988.

4. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343 (a)(3) and (4), 1367 and the aforementioned statutory and constitutional provisions.

## PARTIES

5. Plaintiff Sheryl Orlik ("Mother") together with the child are citizens of the United States of America and currently resides in the State of New York, County of Dutchess.

6. Plaintiff Orlik is the natural mother of Plaintiff Jared Orlik born on January 30, 2005.

7. Defendant, County of Dutchess ("County") is a duly incorporated municipality with general jurisdiction over the Department of Social Services

8. Defendant Dutchess County Department of Social Services ("DSS") is a "child protective agency" within the meaning of Article 10, Section 1012 of the Family Court Act.

9. DSS by virtue of its authority and trust, and by operation of state law, has the duty to administer and supervise the local administration of Federal and State laws, rules, and regulations relating to public child welfare, and such duty includes the duty to care for children committed to DSS by the Courts, to determine if a child should be removed from a home in accordance with applicable constitutional and statutory strictures.

10. As a designated agency under the Family Court Act, (hereinafter "FCA") Section 1024, DSS is allowed to remove children without prior judicial authorization when there is imminent risk to the child's life or health.

11. Defendant Robert B. Allers ("Allers") is the Commissioner of the DSS and has the general responsibility to supervise DSS. Defendant Allers is also responsible to establish and to enforce policies, practices and procedures for the removal of children from their homes.

12. Defendant Ashley Tilton ("Tilton") is employed as a DSS Case Manager.

13. Defendant Ann Woolsey ("Woolsey") is employed as a DSS Supervisor.

14. Defendant Netter E. Thomas ("Thomas") is employed as a DSS Case Manager.

15. Defendant Dave Garcia ("Garcia") is employed as a DSS Supervisor.

16. Defendant Irene Magalski, ("Magalski") is employed as a Deputy Commissioner of Social Services.

## FACTS

17. On February 3, 2005 the New York State Central Register of Abuse and Maltreatment received a report that alleged "Mother appears overwhelmed with chronic pain, preoccupied with her craving for medication, and unprepared for meeting the needs of her newborn son; consequently, there is concern that Jared is at risk of harm in mother's care".

18. On February 3, 2005 the Department of Social Services directed that defendant Thomas conduct an investigation of the report. Defendant Garcia supervised defendant Thomas during his investigation.

19. On or about February 3, 2005 defendants Thomas, Garcia and Allers, without cause, decided to "indicate" the report. The term "indicate" means that the agency determined that there was some credible evidence of abuse or maltreatment.

20. Defendants Thomas, Garcia and Allers concluded that Plaintiff Sheryl Orlik, the children' mother, was a drug addict and could not care for her infant. This determination was made in one day without any evidence to support this conclusion.

21. Further at the time this decision was made each defendant was aware that the mother and child tested negative for any drug use.

22. Notwithstanding, the fact that the Defendants knew Plaintiff had not mistreated or abused her child, they nevertheless deemed that she had abused her son.

23. The Investigation conducted by defendants Garcia and Thomas was grossly negligent, incompetent, bias, wonton, purposeful, ignorant and shocking to the conscience, resulting in great emotional harm to the plaintiffs.

24. The defendants Allers, Magalski, Woolsey, and Garcia have failed to properly train and supervise their caseworkers and this failure to properly train and supervise is a deliberate and willful violation of the plaintiff's constitutional rights.

25. The subsequent efforts by defendants Thomas, Tilton, and Woolsey to "cover up" their actions and shocking conduct only served to further harm the plaintiffs.

26. There was no reasonable basis or any evidence to determine that the child was at risk of harm if left to the care of his mother.

27. The defendants wrongfully only considered the removal of the child from the mother. Thus depriving the mother her constitutional right to due process and her constitutional right to raise he family.

28. The defendant's without due process removed the child from the custody of plaintiff- mother *before* they sought the permission of the Family Court.

29. The defendant's prior to the hearing of February 10, 2005 prevented the plaintiff from leaving the hospital with her child.

30. On February 10, 2005 defendants Thomas, Garcia, and Allers filed a false and derogatory neglect petition with the Dutchess County Family Court and sought the approval for the removal of the child from the care of her mother.

31. Defendants intentionally failed to properly notify Plaintiff mother of any pre-removal hearing.

32. On February 10, 2005 the Dutchess County Family Court Ex-Parte granted the defendant's request to keep the child in foster care. This determination was based upon the false and misleading information provided by defendants Allers, Garcia and Thomas.

33. This hearing was inadequate and violated the Plaintiff's due process rights.

34. After said wrongful actions, Plaintiff was forced to attend drug treatment and undergo evaluations as a condition to visit her child.

35. Plaintiff was humiliated by her attendance at these drug treatment appointments as she was forced to participate with hard core drug addicts and criminals.

36. That Defendant DSS and their contracted drug treatment centers attempted to force the mother to admit to drug use under the threat of losing permanent custody of her son.

37. Defendants Tilton, Thomas, Garcia and Woolsey conspired to deny Plaintiff the proper custody of her son and engaged in a campaign to discover any derogatory information against the mother in an effort to justify the wrongful removal of the child from the mother.

38. These actions were conducted after the removal of the child for the sole purpose to improperly justify the removal and deny the mother the proper custody of her son.

39. Defendant Tilton and Thomas alleged the mother was a victim of domestic violence.

40. Thereafter rather than offering assistance, Tilton and Thomas improperly sought to use these allegations to justify their removal of the child.

41. Plaintiff was denied a fair hearing and due process. The child was only returned to the mother after the court was compelled to schedule a FCA 1028 hearing.

42. As a result of the defendant's actions the subject child was not returned to the mother's care until July 26, 2005 a period of over six months.

43. During this time the Plaintiff mother suffered great emotional anguish as she was denied the company of her son and the opportunity to bond with him at the a very important time in both their lives.

44. Although the child was returned to the Plaintiff on July 26, 2005 she was forced as a condition of the child's return to be subject to the supervision of the DSS and follow their recommendations and thereby continuing the improper intrusion into mother and child's right to be free of unwarranted governmental intrusion.

45. Defendant DSS did not provide Plaintiff a hearing prior to removal of the child.

46. On March 16, 2006, The Family Court dismissed the neglect petition with prejudice.

47. Further as a result of the "indicted" report the mother was registered in the New York State Central Register indicating that there was some evidence of maltreatment.

48. The decision to file an indicated report was made by the defendants Allers, Magalski, Thomas, and Garcia. This indication improperly identified the Plaintiff as a child abuser causing her significant emotional anguish.

49. On October 4, 2006 an administrative hearing was held in regards to the indication by the department. Administrative Law Judge W. Barlett Stillman

determined that there was no evidence of maltreatment or any evidence of imminent harm or risk if the child was in the care of the mother.

50. In his decision, Judge Stillman stated that "in light of the mother's testimony, it is difficult to conclude, in this troubling case, that the Agency has demonstrated, by the requisite evidentiary level, i.e. a fair preponderance of the evidence, that Appellant (mother) maltreated her son Jared".

51. On December 15, 2006 the administrative judge, by written decision, ordered the DSS determination of "indicated" to be amended as to "unfounded" and that the report made to the Central Register be sealed.

52. Removal of the child from the care of the plaintiff was in clear violation of the Plaintiffs right secured by the by the First, Fourth and Fifth Amendments of the United States Constitution as derived through the Fourteenth Amendment of the United States Constitution.

53. That as a result of the actions of the defendants the mother has lived with enormous mental anguish to this day as she is still afraid that the Defendants will again seek to remove her son from her care.

54. That as a result of the actions of the Defendants, the Plaintiff underwent lengthy litigation against the Defendants causing her to incurred significant legal bills as a result of the Defendant's wrongful actions.

55. That the Defendants were aware that the mother suffered from physical disabilities and nevertheless persecuted her as a result of those disabilities.

# COUNT ONE
(Substantive due process-wrongful removal)

56. Plaintiff Sheryl Orlik individually and on behalf of Jared Orlik reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "55" inclusive with the same force and effect as if set forth at length herein.

57. The actions and failures by the defendants and their agents in removing the child constituted an unlawful and unconstitutional deprivation of Plaintiff's right to liberty without due process of law in violation of right secured by the by the Fifth Amendments of the United States Constitution as derived through the Fourteenth Amendment of the United States Constitution.

58. Each of the defendants knew or should have known that such removal was not objectively reasonable under well established law as there was no emergency or imminent danger to the child.

59. As a direct and proximate result of defendant's actions, each of the plaintiff's have suffered permanent personal injuries including pain and suffering, terror, mental anguish and depression.

60. As a direct and proximate result of defendant's actions, each of the plaintiff's has suffered permanent and emotional injuries in the sum of FOUR MILLION (4,000,000.00) DOLLARS each.

## COUNT TWO
### (Procedural Due Process)

61. Plaintiff Sheryl Orlik individually and on behalf of Jared Orlik reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "60" inclusive with the same force and effect as if set forth at length herein.

62. The defendants failed to provide proper notice of the removal, reasons for the removal, proper notice and opportunity of right to a hearing, conspired to prevent mother from having proper notice of a hearing and thereafter failed to provide a timely post removal due process hearing in right secured by the by the First, Fourth and Fifth Amendments of the United States Constitution as derived through the Fourteenth Amendment of the United States Constitution and the New York State Constitution, all causing injury to the Plaintiffs.

63. Any hearing provided to the plaintiff violated due process.

64. The removal of the child violated due process.

65. Each of the defendants knew or should have known that such removal was not objectively reasonable under well established law as there was no emergency or imminent danger to the child.

66. As a direct and proximate result of defendants' actions, plaintiffs have suffered permanent personal injuries in the sum of FOUR MILLION ($4,000,000.00) DOLLARS each.

# COUNT THREE
(Substantive due process wrongful custody of child)

67. Plaintiff Sheryl Orlik individually and on behalf of Jared Orlik reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "64" inclusive with the same force and effect as if set forth at length herein.

68. The actions and failures by the defendants and their agents in interfering with the Family's liberty interest by, removing the child, not scheduling immediate visitation and continuing the wrongful foster care placement deprived the plaintiff's of their constitutional rights as secured by the by the First, Fourth and Fifth Amendments of the United States Constitution as derived through the Fourteenth Amendment of the United States Constitution.

69. As a direct and proximate result of defendant's actions, each of the plaintiffs have suffered permanent personal injuries including pain and suffering, terror, mental anguish and depression.

70. As a direct and proximate result of defendants' actions, plaintiffs have suffered permanent personal injuries in the sum of FOUR MILLION ($4,000,000.00) DOLLARS each.

## COUNT FOUR
### (Substantive due process malicious prosecution)

71. Plaintiff Sheryl Orlik individually and on behalf of Jared Orlik reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "68" inclusive with the same force and effect as if set forth at length herein.

72. The actions by the defendants and their agents in prosecuting a false abuse and neglect petition in an effort to "cover up" the illegal actions of the defendants caused substantial emotional and physical harm to the plaintiffs.

73. As a direct and proximate result of defendants' actions each of the plaintiffs have suffered permanent personal injuries including pain and suffering, terror, mental anguish and depression.

74. As a direct and proximate result of defendants' actions, plaintiffs have suffered permanent personal injuries in the sum of FOUR MILLION ($4,000,000.00) DOLLARS each.

## COUNT FIVE
### (Fourth amendment)

75. Plaintiff Sheryl Orlik individually and on behalf of Jared Orlik reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "72" inclusive with the same force and effect as if set forth at length herein.

76. The actions by the defendants and their agents, in seizing the child from his mother was a violation of his fourth and fifth Amendment rights as secured through the Fourteenth Amendment of the United States Constitution and Article 1, Section 12 of the New York State Constitution.

77. As a direct and proximate result of defendants' actions, each of the plaintiffs have suffered permanent personal injuries including pain and suffering, terror, mental anguish and depression.

78. As a direct and proximate result of defendants' actions, plaintiffs have suffered permanent personal injuries in the sum of FOUR MILLION ($4,000,000.00) DOLLARS each.

WHEREFORE, judgment is respectfully demanded:

a. As to Count One, awarding Sheryl Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

b. As to Count One, Awarding Jared Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

c. As to Count Two, awarding Sheryl Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

d. As to Count Two, Awarding Jared Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS; awarding both plaintiff's punitive damages such as the jury may impose;

13

e. As to Count three, awarding Sheryl Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

f. As to Count three, Awarding Jared Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

g. As to Count four, awarding Sheryl Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

h. As to Count Four, Awarding Jared Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

i. As to Count five, awarding Sheryl Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

j. As to Count five, Awarding Jared Orlik such compensatory damages as the jury may determine, but not less than the amount of FOUR MILLION DOLLARS;

k. Awarding plaintiff reasonable legal fees and costs of litigation pursuant to 42 U.S.C. 1988; and

l. such other and further relief as the Court deems proper.

Dated: Yorktown Heights, New York
June 23, 2008



Daniel Lawrence Pagano DP-8377
Attorney for Plaintiffs
2649 Strang Blvd. Suite 104
Yorktown Heights, New York 10598
(914) 830-5288